UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

REBECKA LEE MILLSAP,

               Plaintiff,                    Case No. 5:16-cv-13579
                                                    District Judge John Corbett O'Meara
v.                                       Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY,

               Defendant.
_____/

## REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 15) and GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 20)

**I.     RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (DE 15), **GRANT** Defendant's motion for summary judgment (DE 20),

and **AFFIRM** the Commissioner's decision.

**II.    REPORT**

Plaintiff, Rebecka Millsap, brings this action under 42 U.S.C. § 405(g) for

review of a final decision of the Commissioner of Social Security

("Commissioner") denying her applications for disability insurance (DI) and

supplemental security income (SSI) benefits.  This matter is before the

Undersigned for a Report and Recommendation on Plaintiff's motion for summary

judgment (DE 15), the Commissioner's cross-motion for summary judgment (DE 20), Plaintiff's response (DE 21), and the administrative record (DE 12).

### A.   Background and Administrative History

Plaintiff alleges her disability began on July 2, 2013.  (R. at 174, 209.)  She lists "back injury" and "degenerative dis[c] disorder" as the conditions that limit her ability to work.  (R. at 177.)  Her applications for DIB and SSI were denied on October 8, 2013.  (R. at 148-155, 70-99.)

Plaintiff requested a hearing by an ALJ.  (R. at 102-104.)  ALJ Stephen Marchioro held a hearing on May 15, 2015.  (R. at 29-69.)  On September 2, 2015, ALJ Marchioro determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 11-28.)  On August 21, 2016, the Appeals Council denied Plaintiff's request for review.  (R. at 1-10.)  Thus, ALJ Marchioro's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on October 6, 2016.  (DE 1.)

### B.   Plaintiff's Medical History

The administrative record contains approximately 200 pages of medical records, of which Exhibits 1F through 5F were available to the ALJ.  (R. at 28, 231-412.)  Among these are the February 16, 2015 notes from David Gast, M.D. (R. at 397-398.)  Dr. Gast's April 8, 2015 physical RFC assessment (R. at 413-417 [Ex. 6F]) and Dr. Gast's office treatment records dated August 2013 through April

2015 (R. at 418-437 [Ex. 7F]) were available to the Appeals Council.  (R. at 5-6.)
These will be discussed in detail, as necessary, below.

### C.    Hearing Testimony

#### 1.    Plaintiff's Testimony

Plaintiff testified at the May 15, 2015 hearing, at which time she was 35
years old.  (R. at 34-53.)  As Plaintiff is not expressly challenging the ALJ's
credibility assessment in her instant appeal, the Court will forego further summary
of Plaintiff's testimony here and will only refer to it as necessary below.

#### 2.    Vocational Expert Testimony

Vocational expert (VE) Susan Lyon testified at the hearing.  Preliminarily,
the ALJ examined Plaintiff regarding her work history so that the VE could
classify Plaintiff's past work.  (R. at 54-60.)  Ms. Lyon then answered five (5)
hypothetical questions, the details of which will be discussed, as necessary, below.
(R. at 60-67.)

### D.    The Administrative Decision

On September 2, 2015, ALJ Marchioro issued his decision.  (R. at 11-28.)
At **Step 1** of the sequential evaluation process,[1] the ALJ found that Plaintiff had
not engaged in substantial gainful activity since July 2, 2013, the alleged onset
date.  (R. at 17.)  At **Step 2**, the ALJ found that Plaintiff had the following severe

---

[1] *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

impairment:  degenerative disc disease (DDD).  At the same time, the ALJ

considered Plaintiff's headaches "non-severe."  (R. at 17.)  At **Step 3**, the ALJ

found that Plaintiff did not have an impairment or combination of impairments that

met or medically equaled the severity of one of the listed impairments.  (R. at 17-

18.)  Between **Steps 3 and 4** of the sequential process, the ALJ evaluated

Plaintiff's residual functional capacity ("RFC")[2] and determined that Plaintiff:

> . . . has the [RFC] to lift and/or carry 20 pounds occasionally and 10
> pounds frequently, stand and/or walk 6 hours in an 8 hour workday,
> and sit for 6 hours in an 8 hour workday [*i.e.*, *exertional limitations*].
> The claimant can frequently climb ramps and stairs, and frequently
> balance, stoop, kneel, crouch and crawl; but she can only occasionally
> climb ladders, ropes or scaffolds [*i.e.*, *postural limitations*]. In
> addition, the claimant should avoid frequent exposure to excessive
> vibration, unprotected heights, and unguarded moving mechanical
> parts [*i.e.*, *environmental limitations*].

(R. at 18-22.)  At **Step 4**, the ALJ determined that Plaintiff was capable of

performing past relevant work as a retail sales clerk, which did not require the

performance of work-related activities precluded by her RFC.  (R. at 22-23.)  In

addition, the ALJ made an alternative, **Step 5** finding:  "considering the claimant's

age, education, work experience, and [RFC], there are other jobs that exist in

significant numbers in the national economy that the claimant also can perform[.]"

(R. at 23-24.)  The ALJ therefore concluded that Plaintiff had not been under a

---

[2] The claimant's "residual functional capacity" is an assessment of the most the
claimant can do in a work setting despite his or her physical or mental limitations.
20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d
235, 239 (6th Cir. 2002).

disability, as defined in the Social Security Act, from July 2, 2013 through the date of the decision.  (R. at 24.)

### E.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

**F.   Analysis**

Plaintiff's sole issue for review is that the ALJ "failed to create an accurate [RFC] Assessment . . . [,]" and, as such, "erroneously found work at Step Five." (DE 15 at 14, 15-18; *see also* DE 21 at 3.) The Commissioner opposes the motion, arguing that the ALJ properly considered both Plaintiff's migraines and the treatment record. (DE 20 at 3, 13-15.)

**1.   The ALJ addressed Plaintiff's headaches at Step 2.**

6

Plaintiff's argument that the ALJ "failed to include the effects of [her]

headaches on her ability to perform work activity[,]" (DE 15 at 16), is unavailing.

As Plaintiff acknowledges, the ALJ determined at Step 2 that Plaintiff's

"headaches are considered non-severe."  Specifically, the ALJ stated:

> Although the claimant has alleged disability due to headaches, she
> reported experiencing headaches since childhood, stating that she has
> been prescribed a variety of mediations over the years.  While some
> medications were effective, she stopped using them due to a change in
> efficacy or unwanted side effects (Exhibit 2F/37 [R. at 270]).[3]  For
> example, in spring 2013, she reported that her current prescription
> medication [Fioricet] was no longer effective; still, she reported
> experiencing about one migraine a week, triggered by her menstrual
> cycle (Exhibit 2F/35-37 [R. at 268-270]).  Yet, when she underwent
> an MRI of the brain in July 2014, it produced normal results (Exhibit
> 4F [R. at 389]).  In contrast[, on August 20, 2014], she was advised to
> limit the use of narcotic medications to prevent headaches (Exhibit
> 4F/79 [R. at 395]); and she reported in January 2015 that her
> headaches were not as severe (Exhibit 4F [R. at 366]).  Since her
> alleged onset date [July 2, 2013], the record does not show that the
> claimant has required emergency treatment or hospitalization for a
> headache,[4] and no associated limitations have been documented. The
> undersigned also takes note of the fact that the claimant was actually

---

[3] Plaintiff reported "headaches since childhood" during her April 17, 2013 visit
with Cathryn G. Pearl PA-C.  (R. at 268, 270, 341, 345.)

[4] The ALJ makes a similar statement within the Step 4 RFC determination.  (R. at
19.)  Although the record medical evidence contains some hospital records (*see*,
*e.g.*, R. at 234-255, 376-389, 436-437), the ALJ's statement appears to be
supported by her October 4, 2013 representation to the CE that she had not been
hospitalized in the preceding 5 years (R. at 310) and her May 15, 2015 testimony
that she had not been hospitalized recently (R. at 41; *see also* R. at 43).  If the June
30, 2015 notes that she was following up "from ED with migraines," was a
reference to the emergency department (R. at 357-360), the source of this
representation is unclear.

able to work with condition,[5] and she testified that she has applied
for numerous jobs (Exhibit 2F).[6]  She also did not report a problem
with headaches when she attended the consultative medical
examination [R. at 310-316].

(R. at 17.)  The ALJ offered the above analysis and then concluded that Plaintiff's

headaches were "non-severe," because "there is no indication they more than

minimally interfere with her ability to perform basic work activity . . . ."  *Id*.  Thus,

Plaintiff's argument that the ALJ "did not consider the limiting effects of [her]

impairments in his Step Four of Step Five analysis[,]" (DE 15 at 17), is inaccurate.

The ALJ need not "'repeat substantially similar factual analyses' at both Steps 2

and 4."  *Cromer v. Berryhill*, No. 16-180-DLB, 2017 WL 1706418, at *4 n.2 (E.D.

Ky. May 2, 2017) (quoting *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir.

2004)).

Moreover, as Plaintiff points out, "[w]here . . . the ALJ finds at Step Two

that a claimant suffers from at least one severe impairment, the ALJ is required <u>to

consider the limiting effects of *all*</u> impairments—including limitations resulting

from non-severe impairments—when determining the claimant's RFC at Steps

Four and Five."  *Garcia v. Comm'r of Soc. Sec.*, 105 F. Supp. 3d 805, 810-811

---

[5] It appears that Plaintiff worked at Meyer True Value Hardware Co. from October
2012 – July 2013 and was self-employed during 2014.  (R. at 166, 178, 184.)

[6] Here, the ALJ generally cited records dated March 2005 through July 2013 from
Otsego Memorial Medical Group (including some hospital records).  (R. at 234-
309 [Ex. 2F].)  However, Plaintiff's testimony regarding job applications occurred
on May 15, 2015 and is located elsewhere in the record.  (R. at 39.)

(S.D. Ohio 2015) (italics in original, underscoring added).  (*See* DE 15 at 16).

Here, the ALJ expressly considered the effects of Plaintiff's migraines / headaches,

both at Step 2 and in the RFC discussion, in compliance with the pertinent

regulation.  (*See* R. at 17, 20-21; 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2) ("We

will consider all of your medically determinable impairments of which we are

aware, including your medically determinable impairments that are not 'severe,' . .

. [.]"); *see also, White v. Comm'r Soc. Sec.*, 312 F. App'x 779, 787 (6th Cir. 2009)

("[T]he combined effect of all impairments must be considered . . . [.]")

Furthermore, in addition to "considering" Plaintiff's non-severe headache

impairment and noting that "no associated limitations have been documented" with

respect to her headaches (R. at 17), he also adequately "explained" his evaluation

of its effects, including "the combined impact of the impairments," noting that

Plaintiff "did not report *a significant problem* with headaches" during the October

2013 CE examination (R. at 20, 310-315) (emphasis added)[7] and that despite all of

---

[7] In fact, the Court notes that, on the day of the consultative examination (CE),
Plaintiff did check boxes for, *inter alia,* headache, neck pain, muscle or joint pain,
stiffness, "glasses or contacts[,]" and back pain on a checklist for "review of
systems[,]" although she appears not to have mentioned headaches in the history
she gave to the examiner.  (R. at 315, 310.)  However, it appears that Plaintiff's
only reference to the CE report in this appeal falls within her summary of the
relevant medical evidence.  (DE 15 at 7.)  As such, the ALJ's treatment of the CE
report does not appear to be a basis of Plaintiff's appeal.  Perhaps more
importantly, the October 4, 2013 consultative examination (CE) report of Samer
ElFallal, D.O., concluded, in part, that Plaintiff's symptomology appeared to be

her claimed "physical limitations[,]" including alleged "severity of migraine

headaches[,]" she is able to help care for her disabled brother-in-law.  (R. at 21.)

*See,* 42 U.S.C. § 423(d)(2)(B) (discussing consideration of "combined effect").

*See also Paton v. Comm'r of Soc. Sec.*, No. 11-CV-15514, 2012 WL 6764534, at

*9 (E.D. Mich. Dec. 6, 2012) (Binder, M.J.) (citing 20 C.F.R. § 404.1545(a)(2), 42

U.S.C. § 423(d)(2)(b)), *report and recommendation adopted*, No. 11-CV-15514,

2013 WL 53857 (E.D. Mich. Jan. 3, 2013) (Friedman, J.).  The ALJ also noted a

lack of acceptable medical sources in support of Plaintiff's claim that she has "such

significant lifting or walking limitations, or that she needs to lie down during the

day."  (R. at 21; *see also* R. at 39, 47-49.)

### 2.    Plaintiff has not shown reversible error in the ALJ's Step 4 RFC determination

According to Plaintiff, the medical evidence and testimony show that "the

effects of the migraine headaches along with her severe back pain limit [her]

ability to stay on task and perform work on a sustained basis."  (DE 15 at 17.)  In

support of this statement, Plaintiff expressly cites:

- A July 16, 2013 office visit with Cathryn G. Pearl, PA-C, who listed Plaintiff's active problems as including "backache" and "migraine unspecified [without] intractable migraine," and Plaintiff's past diagnoses as including "migraine headache." Pearl's assessment was that Plaintiff had intervertebral disc degeneration and sciatica.  (R. at 261-264 [Ex. 2F])

"musculoskeletal in nature without any evidence of nerve pathology or
pathological reflexes[,]" (R. at 313).

- A January 7, 2014 visit with John M. Lawrence, PA-C, to whom Plaintiff complained of a "headache" and who diagnosed Plaintiff with lumbago and "migraine headache."  (R. at 351-353 [Ex. 4F])

- A June 30, 2014 office visit with Lawrence, "to follow up from ED with migraines . . .[.]"  Lawrence's assessment included lumbago and "migraine headache."  (R. at 357-360 [Ex. 4F])

- A January 30, 2015 office visit with Lawrence, at which Plaintiff was following up for headaches.  She had seen a neurologist and been prescribed medications.  Lawrence's assessment included "migraine headache," and his prescriptions included Fioricet/Codeine.  (R. at 366-369 [Ex. 4F])

Plaintiff also cites her testimony that she has a migraine "once a week if not twice a week[;]" for relief, she lays down and tries to "have as much quiet as possible, no light, no sounds, no smell[;]" and the triggers for her migraines include certain smells and fluorescent lights.  (R. at 49, 51; *see also* R. at 39.)

Indeed, the April 8, 2015 physical RFC assessment by David M. Gast, M.D. noted, *inter alia*, a diagnosis of chronic low back pain, a stable prognosis, and that Plaintiff was likely to be "off task" more than 25% of the time.  (R. at 413-417.) However, to the extent Plaintiff points to this form as evidence of "the amount of time [she] would likely be off task due to her headaches and her chronic back pain[,]" or "the impact these impairments have on [her] concentration and ability to focus[,]" the basis of her argument is unclear.  (*See* DE 15 at 8, 13, 17-18.)  As noted above, this piece of evidence was not before the ALJ; therefore, Plaintiff is

11

not likely advancing an argument that the ALJ improperly considered the opinion

evidence (*see* 20 C.F.R. §§ 404.1527, 416.927) such that the ALJ should have

adopted the VE's work preclusive opinion as to being off task for "20 % of the day

. . . [,]" (R. at 66).  Still, in arriving at his conclusions, the ALJ made express

reference to several pieces of objective medical evidence:

- Plaintiff's July 11, 2014 brain MRI, which was "generally unremarkable."  (R. at 17, 389.)

- The September 26, 2012 lumbar spine x-ray, which revealed "[m]ild degenerative change."   (R. at 19, 250.)

- Although only able to cite the earlier test, Plaintiff's November 8, 2012 and August 14, 2013 lumbar spine MRIs each noted "degenerative disc disease L4-5 and L5-S1," with the latter exam noting "progression of a superimposed disc protrusion at L5-S1, now with minimal cranial extrusion."  (R. at 19, 258, 384, 436-437.)

In addition, the ALJ expressly considered Dr. Gast's February 16, 2015

notes, which reflect an assessment of "low back pain" and a recommendation to

"continue exercises."  (R. at 20, 397-398.)  In sum, Plaintiff has not shown

reversible error in the ALJ's finding that an RFC with "a limitation to light

exertional work, with additional postural and environmental limitations[,] fully

accounts for [her] physical condition."  (R. at 22.)

To the extent Plaintiff points to her testimony as evidence of her "inability to

be around bright lighting and certain smells, as they will bring on a migraine

headache," and perhaps even a sensitivity to sound (DE 15 at 10-11, 17-18; R. at

39, 49, 51), "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Jones v. Commissioner of Social Sec.*, 336 F.3d 469, 476 (6th Cir. 2003).  Moreover, "an ALJ's credibility determinations about the claimant are to be given great weight . . .[.]" *Cruse v. Commissioner of Social Sec.*, 502 F.3d 532, 542 (6th Cir. 2007).  As confirmed by Plaintiff's "issues for review," Plaintiff does not expressly challenge the ALJ's assessment that she was "only partially credible."  (*See* R. at 21-22, DE 15 at 14.)  Plaintiff not having shown how the ALJ's credibility determination was improper under 20 C.F.R. §§ 404.1529, 416.929 ("How we evaluate symptoms, including pain."), it should stand.

### 3.     Plaintiff has not shown that the ALJ's treatment of the Healthzone Chiropractic records was harmful.

Plaintiff claims that the ALJ "mischaracterized" some of her treatment history, namely the July 13, 2012 and July 1, 2013 records from Craig R. Gilling, D.C. of Healthzone Chiropractic.  (DE 15 at 18, R. at 231-233.)  At the outset, I note that each of these records materialized *before* the July 2, 2013 onset date.  Still, the ALJ described them as follows:

> . . . in July 2013, the claimant sought treatment from a chiropractor where she reported low back pain radiating to her right leg.  Upon examination, the chiropractor observed areas of spasm and edema in the spine.  *After the claimant underwent a spinal adjustment, she returned about 2 weeks later for another.*  She reported that she felt

> better after the treatment and experienced both a decrease in her
> symptoms and an increase in her passive joint motion.  A good
> prognosis was documented.  The record does not reflect the claimant
> received any additional chiropractic manipulation (Exhibit 1F).

(R. at 19 (emphasis added); DE 15 at 18.)  True, the July 1, 2013 notes reflect that

Plaintiff complained of radiating pain, the chiropractor noted spasm and edema,

and "specific spinal adjustments" would be performed.  (R. at 231.)  However, it is

the notes from July 13, 2012 – approximately *one year earlier* – which indicate

that Plaintiff's prognosis was good, she "felt better after the treatment and has

experienced an increase in passive joint motion and a decrease in her symptoms

since treatment began."  (R. at 232.)

Plaintiff contends "[t]his is further evidence that the ALJ's decision is not

supported by substantial evidence[,]" (DE 15 at 18); yet, she does not explain how

that is so.  "[T]he burden of showing that an error is harmful normally falls upon

the party attacking the agency's determination."  *Shinseki v. Sanders,* 556 U.S.

396, 409 (2009); *see also Rabbers*, 582 F.3d at 654 ("Generally . . . we review

decisions of administrative agencies for harmless error.") (external citations

omitted).  Moreover, it is not clear how the ALJ's improper impression (that

Plaintiff experienced improved chiropractic benefit over the course of two weeks)

was materially harmful to the ALJ's decision regarding the limitations of

Plaintiff's back pain, especially where the ALJ's RFC assessment imposed several

exertional and postural limitations.  Plaintiff having failed to show the harm in the

ALJ's mistaken temporal relationship between these records, it should not be the basis for remand.

### G.    CONCLUSION

Plaintiff argues that the ALJ "failed to follow SSA regulations," presumably 20 C.F.R. §§ 404.1545, 416.945 ("Your residual functional capacity.")  (DE 15 at 16, 18.)  However, for the reasons stated above, the Undersigned concludes that substantial evidence supports the ALJ's RFC assessment and the resulting decision that Plaintiff is not disabled under the Social Security Act.  Accordingly, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (DE 15), **GRANT** Defendant's motion for summary judgment (DE 20), and **AFFIRM** the Commissioner of Social Security's decision.

### III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health &*

*Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.


Dated:  January 29, 2018          s/Anthony P. Patti
                                  Anthony P. Patti
                                  UNITED STATES MAGISTRATE JUDGE


### Certificate of Service

I hereby certify that a copy of the foregoing document was sent to parties of record on January 29, 2018, electronically and/or by U.S. Mail.

                                  s/Michael Williams
                                  Case Manager for the
                                  Honorable Anthony P. Patti

16